IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

```
                                 F I L E D
                                 JUL 2 7 2011
                              CLERK, U.S. DISTRICT COURT
                                 ALEXANDRIA, VIRGINIA
```

Ralph Henry,                     )
    Petitioner,                  )
                                 )
v.                               )        1:10cv1358 (TSE/IDD)
                                 )
Patricia R. Stansberry,          )
    Respondent.                  )

## MEMORANDUM OPINION

Ralph Henry, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his constitutional rights were violated when the United States Parole Commission ("USPC") applied its discretionary guidelines to him because he is a D.C. Code offender. On May 13, 2011, respondent filed a motion for summary judgment with a supporting memorandum and exhibits. When petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), he submitted a Motion to Dismiss Writ of Habeas Corpus. By Order dated June 6, 2011, the Court construed petitioner's pleading as a motion for voluntary dismissal of this action, and directed respondent to indicate within thirty (30) days whether she stipulated to such dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1). Respondent complied on July 6, 2011, and requested that the petition be dismissed with prejudice. Accordingly, petitioner's Motion to Dismiss Writ of Habeas Corpus, construed as a motion for voluntary dismissal, must be denied. Additionally, for the reasons which follow, respondent's Motion for Summary Judgment must be granted, and summary final judgment must be entered in her favor.

## I. Background

The following material facts are uncontroverted. Petitioner Ralph Henry presently is serving an aggregate 28-year D.C. Code sentence. Resp. Ex. A. He was sentenced initially by the Superior Court of the District of Columbia in 1981 to a 12-year term for armed robbery, and was granted parole on August 27, 1984. Resp. Ex. B. In 1987, Henry received a second D.C. Code sentence of 270 days in prison for possession of cocaine. Id. at 1. On May 6, 1988, the D.C. Board of Parole (the "D.C. Board") revoked his parole on the original sentence, and on February 14, 1989, Henry was released on parole on his combined sentences. Id. In 1990, Henry received an additional D.C. Code sentence of 10 years for possession with intent to distribute cocaine. Id. Because that offense was committed while Henry was on parole, Henry's parole was revoked. He was granted reparole on November 7, 1990,[1] and he was ordered to remain in that status until expiration of his sentence in 1999. Id. However, on March 10, 1991, Henry was arrested for possession with intent to distribute cocaine and heroin, for which he subsequently received a sentence of 9 years in prison. Id. Henry's parole accordingly was revoked in December, 1991, and he was reparoled on his aggregate 28-year sentence in August, 1995, with a sentence expiration date of September 27, 2017. Id. at 2.

On August 20, 2003, Henry again was convicted, this time for carnal knowledge and indecent liberties with his 12-year-old stepdaughter. The Circuit Court of the City of Alexandria imposed a sentence of 5 years with all but 15 months suspended, followed by 5 years probation. Id. On October 3, 2003, the USPC issued a warrant for Henry, which was executed upon his release from Virginia custody on July 26, 2004. Resp. Ex. C. At a parole revocation hearing in September, 2004, Henry

---

[1] "Reparole" indicates a parole term that follows a period of incarceration imposed after an earlier grant of parole was revoked.

admitted that he pled guilty to the charges of indecent liberties and carnal knowledge, but denied that he had had inappropriate sexual contact with his stepdaughter. Id. at 1 - 2. The hearing examiner established reparole guidelines of 100 to 148 months based upon a finding that the severity of Henry's conduct while on parole rated a category 7 offense, with a salient factor score of 3. Id. at 2. In a decision issued on October 26, 2004, the USPC revoked Henry's parole, forfeited all of the time he spent on parole, and granted reparole on March 6, 2013 after the service of 120 months, a determination that was within the reparole guidelines. Resp. Ex. E.

The USPC conducted reconsideration hearings for Henry in 2006, 2008 and 2010. Resp. Ex. F - H. The USPC considered Henry's institutional achievements and program participation at each of these hearings, but determined nonetheless that no change in the decision to grant him parole on March 6, 2013 was warranted. Resp. Ex. I - K.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Henry makes four claims for habeas corpus relief in this proceeding: (1) the USPC has no authority to apply federal guidelines to D.C. Code offenders; (2) the USPC has no authority to "mix" federal and D.C. guidelines in determining a D.C. Code offender's eligibility to be reparoled; (3) the National Capital Revitalization and Self-Government Act of 1997 offends the *ex post facto* prohibition; and (4) the USPC's use of the mixed guidelines as a "punitive weapon" violates D.C. parole law, which emphasizes rehabilitation. Pet. at 4. For the reasons that follow, none of these arguments has merit, and final summary judgment on petitioner's claims must be granted to respondent.

### 1.- 2. The USPC Has Authority to Promulgate and Apply Federal Guidelines to D.C. Code Offenders

4

Pursuant to the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No., 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) (the "Act"), the USPC assumed jurisdiction over D.C. Code offenders on August 5, 1998. The Act required the USPC to follow the District of Columbia's existing parole laws and rules, but also gave it the authority to "amend and supplement" those rules and their implementing guidelines. See D.C. Code § 24-12319(a). The USPC's amended version of the D.C. Board's was published in 1998, and is codified at 28 C.F.R. § 2.80 *et seq.*

The D.C. Board's preexisting parole guidelines were adopted in 1987 pursuant to its authority "to establish rules and regulations for its procedure." Ellis v. Dist. of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996). Those rules were repealed on October 27, 2000. See District of Columbia Register Vol. 47, No. 43 (Friday, Oct. 27, 2000) at 8669. Since the D.C. Board's parole guidelines were part of its regulations, the Act confers authority on the USPC to revise those guidelines as it gives the USPC "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons...." See D.C. Code § 24-131(a)(1)(2001).

When Henry committed his offenses in 1981 through 1991, the Board's decisions regarding parole revocation were governed by the following statute:

> If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody.

D.C. Code § 24-206(a). Determination of when a parole violator should be reparoled was to be made based on this statute:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-204(a).

The foregoing statutes, renumbered as §§ 24-406(a) and 24-404(a), respectively, remain in effect today. Therefore, D. C. law authorizes the USPC to exercise its discretion in making reparole decisions based on its assessment of whether an inmate is a "serious risk." Thus, contrary to Henry's argument in the first claim of this petition, both federal law and D.C. law authorize the USPC to promulgate and apply parole and reparole decisions to D.C. Code offenders. Similarly, petitioner's contention in claim two that the USPC may not "mix" federal and D.C. guidelines when making such determination also must be rejected because the USPC exercised its statutory authority to promulgate its own discretionary guidelines for D.C. Code offenders to replace the former guidelines of the D.C. Board. Ellis, 84 F.3d at 1415. Accordingly, both claims one and two of this petition are without merit.

> 3.     **The *Ex Post Facto* Clause is Not Offended When the USPC Applies Its Guidelines to D.C. Code Offenders**

The *Ex Post Facto* Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). The central concern of the *Ex Post Facto* Clause is fair notice to a defendant that the punishment for a crime has increased from what it was when the crime is committed. Weaver v. Graham, 450 U.S. 24, 28 (1981). In determining whether a retroactive change in laws governing parole decisions

violates the *ex post facto* prohibition, the issue is whether the application of the law "creates a significant risk of prolonging [the inmate's] incarceration." Garner v. Jones, 529 U.S. 244, 251 (1995).

In this case, Henry's *ex post facto* claim fails for two reasons. First, the "law" that Henry believes was wrongfully applied to him are 28 C.F.R. §§ 2.87, 2.21 and 2.20, which together require the USPC to use the guidelines set out at §§ 2.21 and 2.20 when making reparole decisions for D.C. Code offenders. These guidelines prescribe various factors for the USPC's use in parole release determinations, but they also allow for the use of discretionary judgment by providing that a decision may be made outside the guidelines "when circumstances warrant." 28 C.F.R. § 2.21(d). Thus, the parole guidelines are just that - guides for the USPC's exercise of its discretion. As such, they are not "laws" to which the *ex post facto* prohibition is applicable. See United States v. Booker, 543 U.S. 220 (2004) (guidelines which are advisory in nature would not be subject to the *Ex Post Facto* Clause); Garner, 529 U.S. at 252 (finding that changes in parole procedures do not necessarily implicate the *Ex Post Facto* Clause); Farmer v. U.S. Parole Comm., 588 F.2d 54, 55-56 (4th Cir. 1978) (where parole guidelines were changed after sentencing but federal parole statute left suitability for parole to USPC's discretion, no *ex post facto* violation occurred); Dufresne v. Baer, 744 F.2d 1543 (11th Cir. 1984), cert.denied, 474 U.S. 817 (1985) (USPC's guidelines do not have the force of law and so cannot violate the *Ex Post Facto* Clause). The USPC's reparole guidelines likewise are merely interpretative guides to show how the USPC is likely to exercise its discretion, and may be disregarded where circumstances warrant. See 28 C.F.R. § 2.21(d). Therefore, both the parole and reparole guidelines do not have the force and effect of law, see Prater v. U.S. Parole Comm., 802 F.2d 948, 954 (7th Cir. 1986), and their retroactive application cannot support a claim

for violation of the *Ex Post Facto* Clause.

Henry's assertion that the USPC runs afoul of the *ex post facto* prohibition because it is not as lenient at the D.C. Board in granting parole is misplaced. When Henry committed his offenses, he received no express or implied promise that parole authorities would exercise their discretion in any particular manner. Because petitioner was given fair notice when he committed his crimes that that if he violated his parole he could be returned to custody for the remainder of his sentence, no *ex post facto* violation occurred when the USPC exercised its discretion in that fashion. See Foster v. Booker, 595 F.3d 353, 362 (6th Cir. 2010) (as long as it was within its discretion to do so, Parole Board's decision to "get tougher" did not violate the *ex post facto* prohibition); Woodley v. Dep't of Corrections, 74 F. Supp.2d 623, 631-32 (E.D. Va. 1999) (parole guidelines "neither deprive the applicant of any preexisting right nor enhance the punishment imposed" because the terms of the sentence are not changed and defendant knew when he was sentenced that parole violations could result in the service of the remainder of his sentence in custody).

Second, even if the USPC's reparole guidelines were deemed to be "laws" that triggered *ex post facto* protection, Henry has made no showing that their application in his case created a significant risk of increased incarceration as compared to the D.C. Board's reparole guidelines. Where, as here, a challenged parole law by its terms does not pose a significant risk of increased punishment for the offender, the offender must show that the rule as applied in his case increased his punishment beyond that which he would have received pursuant to the law in effect when he committed his crime. Garner, 529 U.S. at 255. The USPC's reparole guidelines consist of individualized factors such as the offender's prior record of parole supervision, his conduct while on parole, and his institutional conduct, which are the same factors the D.C. Board would have taken

into account in determining whether a potential reparolee would "live and remain at liberty without violating the law" and whether his "release is not incompatible with the welfare of society." See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (D.C. Board departed from parole guidelines based on offender's repeated failures while on supervision, prior record, and unusual cruelty toward his victim). When the USPC uses these same factors in making reparole decisions as would have been used by the D.C. Board, the *ex post facto* prohibition is not violated. See McKissick v. U.S. Parole Comm., 295 F.Supp.2d 643, 649 (S.D.W.V.), aff'd, 67 Fed. App'x 824 (4th Cir. 2003) (finding that it cannot be assumed that the D.C. Board would not have departed from the guidelines in the same manner as the USPC). Here, Henry's speculation that the D.C. Board might have granted him reparole although the USPC has not is insufficient to sustain an *ex post facto* challenge to that decision. See California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995) (demonstrating a "speculative and attenuated possibility ... of increasing the measure of punishment" will not support an *ex post facto* claim). Therefore, petitioner's third claim must be rejected.

### 4.   The USPC Properly Considered Henry's Post-Incarceration Behavior in Making Its Decision

In his final claim, Henry argues that the USPC violated D.C. parole laws by failing to take his post-incarceration behavior into account in making its reparole decision, and thereby changed the emphasis in parole determinations from rehabilitation to punishment. However, D.C. parole laws do not require that an inmate's participation in institutional programs be a determinative factor in parole decisions. See D.C. Code § 24-404(a). Instead, in deciding whether to parole a prisoner, first the D.C. Board and now the USPC must use its discretion to determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with the public safety." White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994). An

9

inmate's participation in institutional programs is but one factor to be used in making a parole determination and, contrary to Henry's argument, there is no authority to suggest that it is the overriding factor. See Bogan v. D. C. Board of Parole, 749 A.2d 127, 129 (D.C. 2000) (upholding the D.C. Board's denial of parole even though inmate had completed all of the required prison programs). In Henry's case, hearings to reconsider the parole date set by the USPC were conducted in 2006, 2008 and 2010, and the hearing examiner in each instance considered Henry's competition of classes in Spanish, anger management and bookkeeping, as well as his work as a mentor in a victim-impact program. Nonetheless, the examiner determined that Henry's achievements did not qualify for an advancement in his parole date, and the USPC concurred with the examiners' recommendation to leave his established parole date unchanged. Resp. Ex. F at 1-2; Ex. G at 2. Therefore, the USPC properly considered petitioner's post-incarceration behavior and his potential for rehabilitation in making its reparole decision, and petitioner's argument to the contrary is without merit.

## IV. Conclusion

For the foregoing reasons, petitioner's Motion to Dismiss Writ of Habeas Corpus, construed as a motion for voluntary dismissal, must be denied, while respondent's Motion for Summary Judgment must be granted, and summary final judgment must be entered in her favor. An appropriate Order and Judgment shall issue.

Entered this 27th day of _____ 2011.


Alexandria, Virginia

T. S. Ellis, III
United States District Judge

10